**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEBORAH JEAN SAMPSON,

    Plaintiff,

vs.                                                      CASE NO. 3:09-cv-455-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) disability payments.  Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated October 7, 2009 (Doc. #13).  The Commissioner has filed a transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the Court has found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the Court in making its determinations.  Accordingly, the matter has been decided on the written record.  For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

**PROCEDURAL HISTORY**

In the instant action, Plaintiff filed applications for a period of disability, DIB and SSI on October 18, 2005 (Tr. 74-76, 455-58).  Plaintiff alleged the date on which her disability began as January 4, 2005 (Tr. 79).  Plaintiff's applications were denied initially and upon reconsideration.  Thereafter, Plaintiff requested an administrative hearing, which was held on February 5, 2008 in Jacksonville, Florida before administrative law judge (ALJ) Stephen C. Calvarese (Tr. 468-512).  Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Melissa Brooks (Tr. 468).  Plaintiff was represented during the underlying administrative proceedings by Mr. Michael Sullivan, Esq. (*see* Tr. 12-15, 468). On June 26, 2008, ALJ Calvarese issued a hearing decision denying Plaintiff's claims for DIB and SSI (Tr. 19-28).  Plaintiff requested review of the hearing decision by the Appeals Council (AC); however, the AC denied Plaintiff's request on March 17, 2009 (Tr. 4-6), making the hearing decision the final decision of the Commissioner and subject to review under 42 U.S.C. § 405(g).  Plaintiff's current counsel of record, Ms. Chantal J. Harrington, Esq., filed the instant action in federal court on May 21, 2009 (Doc. #1).  The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs (Doc. #11, Plaintiff's brief and Doc. #17, Defendant's brief)[1] and the materials provided in the transcript of the underlying proceedings.

**SOCIAL SECURITY ACT ELIGIBILITY
AND THE STANDARD OF REVIEW**

A claimant may be entitled to disability benefits if she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

---

[1] Hereafter, the Court will identify Plaintiff's brief as "P's brief" and Defendant's brief as "D's brief."

impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  20 C.F.R. § 404.1505.[2]  The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

---

[2]Unless otherwise specified, all references to 20 C.F.R. will be to the 2009 edition.  As the Regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court will not re-weigh the evidence, but will determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## BACKGROUND

Plaintiff, who was born July 31, 1951, was fifty-three on her alleged onset date and

fifty-six years old at the time of the administrative hearing (Tr. 448). Plaintiff has a high school education (Tr. 119, 480), and testified at the hearing that she was taking classes at a local community college (Tr. 495). Plaintiff has past relevant work as an interviewing clerk for the State of Florida, Department of Children and Families (Tr. 25, 80, 472). Plaintiff indicated on her un-dated Adult Medical and Job Worksheet that her ability to work was limited due to uncontrollable diabetes, hypertension, headaches, and a car wreck on January 4, 2005 that caused injuries to soft tissue as well as occasional neck and back pain (Tr. 79). In her Activities of Daily Living form dated November 9, 2005, Plaintiff indicated that her condition kept her from working because, at times, she was in too much pain (Tr. 85). In Plaintiff's Adult Function Report of April 24, 2006, Plaintiff indicated that she suffered from severe pain in her hands, as well as her fingers on both hands, her back and lower back (Tr. 94). Plaintiff also indicated it hurt to lift her arms over her head (Tr. 94). At her hearing, Plaintiff testified to a painful tingling and numbness in her hands that at times prevented her from bending her fingers (Tr. 485-86).

In his decision, the ALJ found Plaintiff suffered from the following "severe" impairments: diabetes mellitus, peripheral neuropathy,[3] hypertension, obesity, lumbar disc disease, neck pain, joint pains, and atypical chest pain (Tr. 21). The ALJ also found that Plaintiff has the residual functional capacity (RFC) to perform light work, with the additional restrictions that Plaintiff must "avoid concentrated exposure to hazards (height/machinery);

---

[3]Neuropathy refers to any disease, or disorder affecting any segment of the nervous system. *Stedman's Illustrated Medical Dictionary* 1048 (25th Ed. 1990).

and she can only occasionally climb, balance, stoop, kneel, crouch, and crawl" (Tr. 25).[4]

At the hearing, the ALJ obtained testimony from VE Melissa Brooks (Tr. 468). The ALJ posed a hypothetical question based on the assessed RFC, in response to which the VE testified that such a person could perform Plaintiff's past relevant work as a registration clerk as it is generally performed in the national economy (Tr. 505-10).[5] The ALJ accepted the VE's testimony regarding Plaintiff's ability to perform past work, and consequently found Plaintiff was not disabled at step four of the sequential evaluation process (Tr. 27).[6]

## ANALYSIS

On appeal, Plaintiff presents two arguments. First, Plaintiff contends that the ALJ erred by failing to make specific findings as to the extent of Plaintiff's upper extremity limitations (P's Brief at 9). Specifically, Plaintiff argues that because the ALJ failed to make

---

[4]Light work requires the ability to lift and carry 20 pounds occasionally and up to 10 pounds frequently, sitting up to 6 hours of an eight-hour workday, and standing/walking 6 or more hours in an eight-hour workday. 20 C.F.R.§§ 404.1567(b) and 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

[5]According to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991) § 205.367-042 (hereinafter DOT), an Interviewing Clerk is a type of Registration Clerk from the same census code. A Registration Clerk performs work at a sedentary exertional level.
   At the hearing, and in her notes, the vocational expert stated that Plaintiff's past relevant work was at a medium exertional level as she performed it (Tr. 506, 121). The Court notes the ALJ erroneously stated in his decision that the VE testified Plaintiff could perform past work as a registration clerk "as performed by the claimant," while also finding the Plaintiff was able to perform the work "as generally performed"(Tr. 27). The Court finds the misstatement to be harmless error in light of the ALJ's finding that Plaintiff was able to perform past relevant work as generally performed, and in light of the ALJ's assessment of Plaintiff's residual functional capacity to perform light work, while the DOT describes Plaintiff's past relevant work as sedentary in nature.

[6]Ms. Brooks also identified three other jobs in the national economy that a person with Plaintiff's RFC and transferrable skills could perform (*see* Tr. 506-07).

any specific findings or engage in a detailed analysis of Plaintiff's ability to finger, reach and grasp, the Commissioner's decision is not supported by any meaningful analysis (P's Brief at 11). Second, Plaintiff claims that the ALJ erred by presenting the vocational expert with a hypothetical question that was not an accurate reflection of all Plaintiff's limitations (P's Brief at 13).

Defendant responds that contrary to Plaintiff's argument, the ALJ did not err and substantial evidence supports the ALJ's findings (D's Brief at 5). Defendant asserts the ALJ properly evaluated the evidence, and the overall evidence of record constitutes substantial evidence to support the ALJ's finding that Plaintiff did not suffer significant manipulative limitations due to an upper extremity impairment (D's Brief at 6).

Upon due consideration and review of the record, the Court finds Plaintiff's arguments are without merit and addresses the issues below.

**Specific Findings on Upper Extremity Limitations/Subjective Complaints of Pain**

Citing *Phillips v. Barnhart*, 357 F.3d 1232 (11th Cir. 2004), Plaintiff argues that the ALJ failed to comply with Eleventh Circuit law by not making specific findings of fact as to the impact of Plaintiff's "nonexertional limitations on Plaintiff's ability to perform sedentary work" (P's Brief at 11). Contrary to Plaintiff's assertion, the Court finds not only is the instant case easily distinguishable from *Phillips*, but a review of the decision and the record in this case reveals the ALJ's decision is clearly in accord with the law and is supported by substantial evidence.

*Phillips* was a step five case which considered whether an ALJ could permissibly rely solely on the Grids when determining whether a claimant with both exertional and non-exertional limitations is able to perform jobs in the national economy, other than his or her

past relevant work.[7] *Phillips*, 357 F.3d at 1241-44. In *Phillips* the court stated the issue was to "determine when an ALJ may rely on the grids and when an ALJ is required to consult a vocational expert under step five." *Phillips*, 357 F.3d at 1241. In reaching this determination, the *Phillips* court held that the ALJ must address the issues of whether the claimant could perform a full range of work and whether the claimant's non-exertional impairments significantly limit basic work skills, before relying on the Grids. *Id.* Because Phillips had both exertional and nonexertional limitations and retained the residual functional capacity for only sedentary work, the court noted that a specific finding was necessary as to whether the only identified nonexertional limitation significantly limited Phillips' basic work skills. *Id.* at 1243-44. Of relevance to this case, *Phillips* stands for the proposition that specific findings must be made as to whether the nonexertional limitations set forth in the RFC affect a plaintiff's ability to work. *Phillips* does not, as Plaintiff seems to suggest, require the ALJ to make specific limitation findings as to every nonexertional symptom Plaintiff may have.

Significantly, Plaintiff does not challenge the assessed residual functional capacity, which found Plaintiff was capable of performing light work (*see* P's Brief). If a plaintiff can perform light work, that person is generally determined to be capable of sedentary work as well. 20 C.F.R. § 404.1567(b). Thus, the work base for Plaintiff in the instant action is much broader than that found for Phillips, who was limited to "entry level work at the

---

[7]The Grids are a series of rules which use a matrix of a claimant's RFC for sedentary, light, medium or heavy work and the claimant's vocational profile of his age, education and past relevant work, to direct a conclusion on the issue of whether the claimant is capable of substantial gainful activity in the national economy. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00; *Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

8

sedentary exertional level." *See Phillips*, 357 F.3d at 1239.  Whereas Phillips was decided at step five in the evaluation process, the disability determination in this case was made at step four.  The issues on appeal in Phillips involved the ALJ's weighing of the treating physician's opinion and the ALJ's exclusive reliance on the Grids.  *See generally, Phillips v. Barnhart*, 357 F.3d at 1232-44.  The issues in this case challenge the ALJ's lack of finding significant upper extremity limitations and the ALJ's hypothetical question posed to the vocational expert.  The Grids were not used in this case to determine whether or not Plaintiff was disabled.  In sum, much of *Phillips* is simply inapposite to this case.

Without challenging the RFC, Plaintiff contends that the ALJ Calvarese failed to perform any meaningful analysis because he did not make specific findings as to Plaintiff's asserted manipulative limitations (P's Brief at 9, 11).  The Court disagrees.  From review of the record, it is clear that Plaintiff's alleged upper extremity limitations are based primarily on her complaints of pain, which appear throughout the record (*see* Tr. 88-89, 92, 94,106-07, 109, 111, 117, 218-19, 485-88).  The single piece of objective medical evidence regarding Plaintiff's asserted hand and finger problems is a nerve conduction study (NCV/EMG) test performed on February 28, 2005 (Tr. 123-24), that was ultimately determined by Plaintiff's treating physician at the time to be within normal limits (Tr. 122).  Thus, the question becomes, did the ALJ properly evaluate Plaintiff's subjective complaints of pain?

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. 404.1529.  When a claimant attempts to establish disability through her own testimony of

9

subjective pain symptoms, the ALJ must apply the Eleventh Circuit's three-part pain standard:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560 *(quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added)).

Once both prongs of the pain standard are satisfied, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote,* 67 F.3d at 1561 (citing 20 C.F.R. § 404.1529). Thus, at this stage the ALJ must consider a claimant's subjective testimony of pain. *Id.* at 1560. Furthermore, "[o]bjective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques... must be considered in reaching a conclusion as to whether the individual is under a disability. 42 U.S.C.A. § 423(d)(5)(A). Pain testimony is more credible when evidence indicates that the claimant's condition could reasonably be expected to cause pain; claimant consistently complained of pain; and claimant's daily activities have been significantly affected by pain. *Foote v. Chater*, 67 F.3d at 1560-62 (citations omitted); *see also Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986). Thus, a determination as to pain can only be reached by looking at the entire record, including both objective and subjective evidence.

Here the ALJ found that objective medical evidence established that Plaintiff has symptoms and limitations, and Plaintiff's medically determinable impairments could produce the alleged symptoms (Tr. 26). When a plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on a consideration of the entire record. *Foote,* 67 F.3d at 1561 (emphasis added) (citing 20 C.F.R. § 404.1529).

In this instance, the record contains a single objective medical test that might plausibly support Plaintiff's allegation of manipulative limitations in her hands and fingers (Tr. 122-24). While there are numerous reports of pain throughout the record, there is a significant body of evidence that contradicts Plaintiff's assertions of manipulative limitations in her hands and fingers. For example, on February 5, 2005, Plaintiff denied numbness or tingling in her hands and feet, and her grip was found to be strong and equal by Dr. Holthaus, a treating physician after Plaintiff's accident (Tr. 140). On March 11, 2005, she again denied numbness and tingling in any extremity and muscle strength was found to be within normal limits on all extremities (Tr. 127). Although on April 1, 2005 Plaintiff presented for a follow-up with complaints of continued pain in her arms and legs, left hand numbness and tingling, and reports of dropping things with her left hand, on examination her grip strength was strong and equal and her muscle strength was full against resistence (Tr. 126). In January of 2006, Plaintiff underwent a consultative physical examination during which she complained of pain in her fingers and her grip strength was found to be weak, but the medical doctor determined there was no explanation for the weakness in her hands, found there was no impairment of gross or fine movements, and observed Plaintiff

managed well with both hands in picking up her belongings and opening the door without trouble (Tr. 193-96). This doctor also questioned Plaintiff's cooperation (Tr. 196). From late January 2006 through April 2007, Plaintiff was seen a number of times at the University of Florida Shands Hospital and the Eastside Family Practice of Shands for various ailments (Tr. 205-11, 216-34, 278-330). Various range of motion limitations were periodically noted, but there were no notes of significant neurological deficits in the upper extremities and Plaintiff was found to have normal coordination of upper and lower extremities bilaterally (*see id.*). From March through June 2007, Plaintiff did not complain of any upper extremity problems except for pain in her left arm that actually radiated from chest pain on February 10, 2007 (*see* Tr. 297-98; *also see* 283-296, 299-330).

In light of the evidence and Plaintiff's testimony, the ALJ determined that Plaintiff's subjective allegations concerning the intensity, persistence and limiting effects of her pain were not entirely credible (Tr. 26). In making this finding the ALJ did not reject Plaintiff's testimony outright, but merely determined that her testimony concerning her subjective complaints of pain was "not entirely credible" (Tr. 26). The ALJ's credibility finding of Plaintiff's testimony is supported by a number of reasons, for which substantial evidence can be found in the record.

The ALJ noted that Plaintiff's daily activities are not as limited as one would expect given the complaints of disabling symptoms (Tr. 26). Plaintiff is able to drive, is ambulatory, is able to dress, groom, and feed herself without assistance and does so on a routine basis (Tr. 214, 260). Plaintiff is capable of washing dishes, doing laundry, folding clothes, sweeping floors and operating small appliances including the use of an iron to press clothes (Tr. 89, 214). Plaintiff has been taking classes at a community college since January of

2007 (Tr. 118-20). Plaintiff takes three college classes, three days a week, four hours a day, and does homework two hours a day (Tr. 495, 498-99). Plaintiff is capable of typing fifty-five words a minute, but stated that after ten to fifteen minutes her hands become numb and she implied she then has to take a break (Tr. 500, 504-05).

The ALJ also noted the medical records showed that the Plaintiff received treatment for her ailments, yet that treatment was routine and conservative in nature (Tr. 26; *see also,* Tr. 122, 125-28, 140, 159-76, 193-96, 205-08, 220-21, 283-85, 287-90, 301-02, 304, 310-14, 323-326, 440-42, 450-51). The Plaintiff stated at the administrative hearing that she was only taking over the counter medication for pain and she was Neurontin for the numbness and tingling, which helped without side effects (Tr. 490-91, 501-02, 504). The record also reflects evidence that Plaintiff was at times non-compliant with therapy (Tr. 333, 340, 347). Furthermore, the ALJ found Plaintiff's description of symptoms and limitations to be inconsistent and unpersuasive throughout the record (Tr. 26).

The ALJ also found the Plaintiff's demeanor and appearance to be unpersuasive at the administrative hearing (Tr. 26). The ALJ was careful to note that his observation was only one of many reasons for reaching a conclusion as to the credibility of Plaintiff.

The ALJ correctly stated that nowhere in the record were there any opinions from treating or examining physicians that indicated the claimant was disabled or had limitations greater than those included in the RFC (Tr. 26). The ALJ reasoned that given Plaintiff's allegations of totally disabling symptoms there should be some indication in the treatment records of restrictions placed on the claimant by a treating doctor (Tr. 26).

Finally, the ALJ noted that the RFC determinations reached by the doctors employed by the State Disability Determination Services to review Plaintiff's records supported a

finding of not disabled (Tr. 26, 197-203, 249-56).

Under *Allen v. Sullivan,* if an ALJ provides at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). The ALJ in the instant case stated more than three reasons in his decision for finding Plaintiff's subjective complaints of pain were not entirely credible (Tr. 26).

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote,* 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence). Despite this deferential standard, it is essential that the reviewing court scrutinize the record in its entirety to determine the *reasonableness* of the decision reached by the ALJ. *Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987) (emphasis added) (internal citation omitted). A reviewing court must be able to determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the regulations as construed by this circuit; otherwise, the reviewing court cannot effectively perform its duty. *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). The function of the reviewing court is to "'ensure that the decision [of the ALJ] was...carefully considered in light of *all the relevant facts.*'" *Id.* at 590 (emphasis added) (citation omitted).

After an exhaustive review of the record, the Court is satisfied that the ALJ's decision shows thorough consideration of Plaintiff's testimony and of the overall evidence in the record (*see* Tr. 25-27). The ALJ clearly articulated his credibility finding, and the reasons he found for discounting Plaintiff's statements are supported by substantial evidence.

Plaintiff claims to have manipulative difficulties that preclude her ability to work and

argues the ALJ committed reversible error by failing to make specific findings regarding the extent of these alleged upper extremity limitations (P's Brief at 9-12). Yet, no medical source placed any limitations on Plaintiff's ability to function in the workplace. The medical doctor who examined Plaintiff at the request of the Commissioner found her to have an unexplainable weakness in her grip and questioned her level of cooperation with the exam (Tr. 193-96). The state agency medical doctor who reviewed Plaintiff's medical records and completed a physical RFC questionnaire did not find Plaintiff had any manipulative limitations (Tr. 197-203). The ALJ properly evaluated Plaintiff's subjective testimony and found somewhat lacking. credibility. Plaintiff's assertions of manipulative problems with her hands and fingers are not supported by substantial evidence in the record. The ALJ did not err in failing to make specific findings concerning Plaintiff's alleged manipulative limitations.

**Hypothetical Question**

Plaintiff argues the ALJ erred by posing an incomplete hypothetical question to the vocational expert (P's Brief at 13). Specifically, Plaintiff asserts the ALJ erred when he did not include manipulative limitations in the hypothetical question (P's Brief at 13).[8] The Court disagrees.

It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must

---

[8]The Court notes Plaintiff alleges this error without alleging error in the assessment of severe impairments or Plaintiff's residual functional capacity. The Court further notes that a Registration/Interviewing Clerk need only occasionally perform any fingering. *See* United States Dep't of Labor, *Dictionary of Occupational Titles,* § 205.367-042 (4th ed. 1991) (Registration Clerk).

include all impairments of the particular claimant/plaintiff. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Here, the ALJ chose to utilize the services of a vocational expert at step four. Although the ALJ must include all of the Plaintiff's impairments in his hypothetical formulations, he is not required to include any limitations or allegations that are not supported by substantial evidence and/or were properly discounted. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617 (11th Cir. 1987). As discussed above, the Court has found the ALJ properly evaluated the medical evidence and Plaintiff's testimony. The ALJ's RFC assessment is based on substantial evidence. Thus, the Court must determine whether the ALJ failed to include any limitations resulting from Plaintiff's severe impairments in the hypotheticals posed to the vocational expert, and if so, whether such failure constitutes grounds for reversal.

In the instant case the ALJ posed two hypothetical questions (Tr. 505-09). The first hypothetical set out the RFC the ALJ determined for Plaintiff (Tr. 507-08, 25). The VE informed the ALJ that a person who fit that hypothetical profile would be able to do Plaintiff's past relevant work per the DOT, as well as all of the jobs that utilized transferrable skills (Tr. 508). The ALJ then posed another hypothetical that included those limitations stated in the first question and added restrictions that included the need to alternate positions virtually at will and the need to be able to work in spurts of ten to fifteen minutes with periods of rest of thirty minutes in between, and that person could only lift ten pounds occasionally (Tr. 509). The VE told the ALJ that this would eliminate all past relevant work and transferrable jobs (Tr. 509).

The ALJ did not include any manipulative limitations in either of the hypothetical questions posed to the VE (Tr. 505-09). In formulating the hypothetical questions, the ALJ relied partially on the physical RFC assessments of the State Agency reviewing physician, who did not find Plaintiff to have any manipulative limitations (*see* Tr. 507-10, 249-56). The first hypothetical question did, however, include all the limitations arising out of her severe impairments, as set forth in the RFC assessment. In this case, the ALJ found Plaintiff's diabetes mellitus, peripheral neuropathy, hypertension, obesity, lumbar disc disease, neck pain, joint pains, and atypical chest pain precluded her from engaging in very heavy, heavy, and medium work activity; that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl and should avoid concentrated exposure to hazards such as work at heights and around machinery (Tr. 21, 25). Plaintiff has failed to show any additional limitations. Plaintiff's alleged manipulative limitations are based on subjective complaints of pain which, as discussed above, the ALJ properly discredited.[9]

Accordingly, the Court finds the hypothetical questions set forth for the VE's consideration included adequate limitations to account for all of Plaintiff's severe impairments.

## CONCLUSION

Thus, upon review of the ALJ's decision and the underlying record, the Court finds substantial evidence supports the ALJ's factual findings which were made in accordance

---

[9]Even Plaintiff's attorney at the administrative hearing acknowledged the record of Plaintiff's case did not contain any physical limitations assessed by Plaintiff's treating physicians (Tr. 508-09).

with the applicable law and Regulations.  For the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.  Each party shall bear its own costs.

**DONE AND ORDERED** at Jacksonville, Florida this 19th day of August, 2010.

Copies to all counsel of record

THOMAS E. MORRIS
United States Magistrate Judge